■ In the Matter of CARMEN AHSAF, Petitioner, v. EWALD B. NYQUIST, as Commissioner of Education of the State of New York, et al., Respondents. — Proceeding initiated in the Appellate Division of the Supreme Court in the Third Judicial Department, pursuant to subdivision 4 of section 6510 of the Education Law, to annul an order of the Commissioner of Education revoking petitioner's license as a practical nurse. The material facts are not disputed, the only issue raised on this appeal being whether the measure of punishment imposed was, under all the circumstances, excessive. Petitioner was licensed as a practical nurse by the New York State Education Department on August 31, 1967. In January, 1969 she commenced using heroin as a result of her relationship with an addict. During the period commencing some three months thereafter and until April 1, 1971 when she entered the methadone program at Lenox Hill Hospital, petitioner made at least 10 unsuccessful attempts to cure her addiction through various medical and drug rehabilitation programs. Since entering the Lenox Hill Hospital program, petitioner has not used heroin. On December 23, 1971, a petition was filed against Mrs. Ahsaf by Jerome Rashkis, Senior Investigator for the Department of Education, seeking revocation of her license due to narcotic drug addiction on and after January 9, 1969. The petition contained three specifications charging addiction, negligence and professional misconduct arising from the use of drugs. Following a hearing before a hearing panel of the Committee on Professional Conduct of the State Board for Nursing, the first and third specifications were sustained. Since this was the first instance of a disciplinary proceeding involving an individual on methadone maintenance, the panel considered expert testimony on the use of methadone maintenance and elected to adopt a case by case approach to such disciplinary proceedings. Finding that petitioner had progressed well in the methadone maintenance program and that she seemed to be highly motivated to continue to practice her profession, the panel recommended that petitioner's license be revoked but that such revocation be stayed and that she be placed on probation for a period of five years. The Board of Regents Committee on Discipline, however, noted petitioner's "lack of candor" in two employment interviews and voted to unconditionally revoke her license. During an interview at Flower Fifth Avenue Hospital, in February, 1971, petitioner falsely stated that she was not using drugs in answer to a question. After the first hearing, petitioner obtained employment at the Women's Detention Center at Rikers Island where her duties included dispensing methadone to prisoner-addicts. She testified, in response to a question of a panel member, that the administrators were unaware that she was in a methadone program. No other circumstances of the interview are revealed in the record. It is axiomatic that the measure of discipline is a matter primarily for the Board of Regents subject to a limited power of review by the courts (*Matter of Scire* v. *Board of Regents of Univ. of State of N. Y.*, 23 A D 2d 943). However, where the punishment meted out has been disproportionate to the offense, even in cases involving a "lack of candor" by professionals, we have not hesitated to modify the punishment (see, e.g., *Matter of Corwin* v. *Nyquist*, 37 A D 2d 656; *Matter of Shander* v. *Allen*, 28 A D 2d 1150, affd. 24 N Y 2d 974; *Matter of Gaines* v. *Allen*, 20 A D 2d 598). In

this case, it seems to us that the Board of Regents has placed altogether too much emphasis on two instances of concealing relevant information from an employer. While we certainly do not condone lying, we can understand how a young, divorced, addicted mother might think it is justifiable to withhold relevant information in order to obtain employment, which one expert testified was "the next most important factor", aside from the use of methadone and counseling, in the rehabilitation of a patient. There is nothing in this record to indicate that petitioner's addiction affected the performance of her duties. To the contrary, her supervisors at the Flower Fifth Avenue Hospital testified that she was a competent nurse, that her performance evaluation contained ratings of "very good" or "satisfactory" in all categories, and that she had been given a merit raise in the course of her work. It is significant that despite petitioner's false statement to him in the interview and despite his knowledge of her enrollment in the methadone maintenance program, Patrick Cussen, who hired her, stated that, on the basis of her performance, he would continue to employ her. In deciding the appropriate measure of discipline, we think it noteworthy that petitioner's participation in the methadone maintenance program has apparently been successful since April, 1971 and that she has refrained from using heroin since that date. We feel it would be unduly harsh and counterproductive to reward petitioner's efforts to "kick" the vicious heroin habit, which one expert characterized as nothing short of "heroic", with revocation of her license. Revocation in this case, where rehabilitation has been so successful and for such a length of time, might well serve as a deterrent to other licensees in seeking help for addiction. The clear State policy of encouraging rehabilitation of drug addicts should not be frustrated. Determination modified, to reduce the punishment to revocation of petitioner's license and registration, said revocation to be stayed and petitioner to be placed on probation for a period of five years on such terms and conditions as may be fixed by the Board of Regents, for which fixation the matter is remitted to said board, and, as so modified, confirmed, without costs. Greenblott, Cooke and Sweeney, JJ., concur; Herlihy, P. J., and Staley, Jr., J., concur in the result.